******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* FRANCIS ANDERSON
(AC 39794)

Lavine, Keller and Elgo, Js.

*Syllabus*

Convicted of the crimes of assault in the second degree and reckless endangerment in the second degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident that occurred in the psychiatric unit of a hospital at which he was a patient, during which the defendant entered a small employee break room where four other forensic treatment specialists, including W, were seated around two tables. The defendant yelled profanities and threatening language at the treatment specialists in the room, stated that a patient down the hallway woke him up and that the treatment specialists were not doing their jobs, threw two duffel bags that were on the tables and grabbed a metal food cart by the handle and flung it into the air. The cart struck W in the chest and propelled her backward into nearby cabinets, causing her serious injuries. Soon thereafter, the defendant entered a conference room, sat down and recounted his version of the events to M, a forensic nurse, in a concise, logical manner, explaining that he had lost his temper and was frustrated by being in the hospital unit. The defendant subsequently was arrested and charged with one count of assault in the second degree for flinging the metal cart that hit and seriously injured W and with four counts of reckless endangerment in the second degree for throwing the two duffel bags and creating a risk of injury to each of the treatment specialists. Following a trial to the court, the court found the defendant guilty on all counts, concluding that the defendant's conduct both before and following W's assault demonstrated his awareness, and conscious disregard, of the substantial risk that his conduct would result in serious injury, and that the defendant possessed the mental capacity to understand and to appreciate the gravity of the risk in violently throwing a metal cart toward W and the ability to consciously choose to disregard that risk. On the defendant's appeal to this court, *held*:

1. The defendant could not prevail on his claim that there was insufficient evidence to convict him of assault in the second degree because no reasonable finder of fact could have concluded beyond a reasonable doubt that, in light of his claimed mental disease or defect, he acted with the requisite recklessness and had the capacity to be aware of and to disregard the substantial risk of serious physical injury to W by his flinging the metal cart at W: notwithstanding the defendant's significant psychiatric and behavioral issues, there was sufficient evidence for the trial court to conclude that he possessed the mental capacity to control his conduct and to understand and appreciate the risk resulting from his actions, as there was testimony from a professor of psychiatry, as well as a clinical and forensic psychologist, indicating that the defendant had the capacity to understand his conduct at the time of the incident and had the ability to control it, and that his recognition of A, a forensic treatment specialist, and the patient who woke him in the hallway, and his decision to not engage with them, indicated that he was not dissociated from the situation but, rather, was acting volitionally, and the evidence showed that the defendant walked approximately eighty-two feet from his bedroom to the break room to confront the treatment specialists when A and the patient were only approximately thirty feet away, all of which supported the trial court's finding that the defendant consciously made a decision to confront the individuals he felt were actually to blame for the commotion; moreover, although the defendant claimed that he was not aware of W's preexisting medical condition and thus could not be aware of the risk of serious injury to her from flinging the cart in her direction, he conceded at oral argument before this court that his awareness of her condition was not necessary for a finding of recklessness.

2. There was sufficient evidence of the defendant's mental state to sustain his conviction of four counts of reckless endangerment in the second

degree: the testimony presented at trial indicated that the defendant grabbed and threw in the small break room two duffel bags that were unzipped and contained personal items, that there was a shelf in the room containing boxes and other items in close proximity to the tables around which the treatment specialists were standing, and that the defendant threw the bags toward the right rear corner of the room near where the shelves were located, all of which supported the trial court's finding beyond a reasonable doubt that the treatment specialists were at risk of physical injury from the duffel bags, their contents, or items knocked off the shelf as the defendant threw the bags in a small room full of people and furniture; moreover, there was sufficient evidence in the record to sustain the trial court's finding that the defendant had the mental capacity to comprehend and to be aware of the risks associated with throwing the duffel bags.

Argued September 14—officially released November 13, 2018

*Procedural History*

Substitute information charging the defendant with the crime of assault in the second degree and with four counts of the crime of reckless endangerment in the second degree, brought to the Superior Court in the judicial district of Middlesex and tried to the court, *Vitale, J.*; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Nancy L. Walker*, assistant state's attorney, with whom, on the brief, were *Peter McShane*, former state's attorney, and *Jeffrey Doskos*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Francis Anderson, appeals from the judgment of conviction, rendered after a trial to the court, of one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (3) and four counts of reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a). On appeal, the defendant claims that there was insufficient evidence of the requisite mental state necessary for the trial court to have concluded that he acted recklessly. We affirm the judgment of the trial court.

On April 29, 2016, the trial court issued a memorandum of decision in which it found the following relevant facts. On August 24, 2014, Joanne Aldrich was working at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting) as a forensic treatment specialist and was assigned to unit rounds during which she checked every fifteen minutes to see that the patients were in their rooms. Sometime after 10 p.m., a patient was out of his room, standing by the exit door near the defendant's bedroom. This patient was confused and making noise. While Aldrich was attempting to calm the patient, the defendant[1] exited his bedroom, which was located near where Aldrich and the patient were standing. The defendant did not approach or speak to Aldrich or the patient but, instead, proceeded down the hallway.

Meanwhile, four other forensic treatment specialists (treatment specialists), David Latronica, Iris Fuqua, William Hewitt, and Darla White, were in the employee break room. Inside the small, approximately thirteen foot by thirteen foot break room, the treatment specialists were seated around two tables that were placed together to form a larger table. Two duffel bags rested on the tables and contained various personal items. There was a shelf in close proximity to the tables that contained boxes and other items. A large metal food cart, which was approximately three inches taller than the tables, was nearby.

The defendant appeared at the open door of the break room, which was approximately eighty-two feet from his bedroom, and began to yell profanities and threatening language. He stated that he had been awakened by a patient down the hallway and that the treatment specialists in the break room were not doing their jobs, and asked why they were not helping the "old woman," in reference to Aldrich. The defendant entered the room, and the four treatment specialists stood up. The defendant appeared to be addressing Latronica, with whom he did not have a good relationship. The defendant threw the two duffel bags that were on the table and grabbed one of the tables. The treatment specialists placed their hands on the table to prevent the defendant from lifting or flipping it. The defendant then grabbed the metal food cart by the handle and flung it so that

it became airborne. The cart struck White in the chest and propelled her backward into nearby cabinets. The defendant then left the room.

Lance Mack, a forensic nurse, went to the break room after learning about the incident. Mack saw the defendant in the hallway entering a bathroom. Mack entered a conference room directly across from the bathroom as he thought that the defendant, with whom he had a good rapport, would follow him into the room because it was the "logical thing to do." Just as Mack anticipated, the defendant entered the room and sat down. The defendant recounted his version of the events in a concise manner, following logical thought patterns, explaining that he lost his temper and was frustrated by being in the unit.

As a result of being hit by the metal cart, White experienced substantial pain in her chest, neck, and shoulder, and suffered headaches. After seeking treatment that failed to alleviate her symptoms, White underwent magnetic resonance imaging that revealed a herniated cervical disc requiring surgery. Following the surgery, White experienced numbness in her hands and was unable to turn her head to the right, engage in activities with her children, or return to work.

The defendant was arrested and charged with one count of assault in the second degree in violation of § 53a-60 (a) (3) for flinging the metal cart that hit White and caused her serious injury. The defendant was also charged with four counts of reckless endangerment in the second degree in violation of § 53a-64 (a), each count identifying one of the treatment specialists, for throwing the two duffel bags and creating a risk of injury to them. Following a trial, the court found the defendant guilty on all counts. This appeal followed.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumula-

tive effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences by the evidence it deems to be reasonable and logical. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

## I

The defendant first claims that there was insufficient evidence to sustain his conviction of assault in the second degree. Specifically, he argues that there was insufficient evidence to allow a reasonable finder of fact to conclude beyond a reasonable doubt that, in light of his claimed mental disease or defect, he had the capacity to be aware of and to disregard the substantial and unjustifiable risk of serious physical injury to another person posed by the flinging of the cart.[2] He further argues that because White's injury was caused by her fall, the cart itself did not cause the injury,[3] and, in any event, because he was unaware of White's preexisting condition,[4] he did not know that there was a risk of serious injury that could result from flinging the cart in her direction. We are unpersuaded.

Section 53a-60 (a) provides in relevant part that "[a] person is guilty of assault in the second degree when . . . (3) the actor recklessly causes serious physical injury to another person by means of a deadly weapon or dangerous instrument . . . ." "According to General Statutes § 53a-3 (13), [a] person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk . . . . The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." (Internal quotation marks omitted.) *State* v. *Carter*, 141 Conn. App. 377, 393, 61 A.3d 1103 (2013), aff'd, 317 Conn. 845, 120 A.3d 1229 (2015); see also *State* v. *Douglas*, 126 Conn. App. 192, 207–208, 11 A.3d 699, cert. denied, 300 Conn. 926, 15 A.3d 628 (2011).

"Recklessness involves a subjective realization of that risk and a conscious decision to ignore it. . . . It does not involve intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result. . . . Because it is difficult to prove this through direct evidence, the state of mind amounting to recklessness may be inferred from con-

duct." (Internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 756, 961 A.2d 322 (2008). "In determining whether a defendant has acted recklessly for . . . [s]ubjective realization of a risk may be inferred from [the defendant's] words and conduct when viewed in the light of the surrounding circumstances." (Internal quotation marks omitted.) *State* v. *Carter*, supra, 141 Conn. App. 393.

The court concluded that "the defendant's conduct both before and following White's assault demonstrates his awareness of, and conscious disregard of, the substantial risk that his conduct would result in serious injury" and "that the defendant possessed the mental capacity to understand and to appreciate the gravity of the risk in violently throwing a metal cart toward White, and the ability to consciously choose to disregard such risk." We disagree with the defendant's claim that there was insufficient evidence for the trial court to draw these conclusions.

There was testimony from Catherine Lewis, a professor of psychiatry, indicating that the defendant had the capacity to understand his conduct at the time of the incident and had the ability to control it. There was also testimony from both Andrew Meisler, a clinical and forensic psychologist who testified for the defense, and Lewis that the defendant's recognition of Aldrich and the patient in the hallway, and his decision to not engage with them, indicated that the defendant was not dissociated from the situation but, rather, was acting volitionally. Lewis' testimony indicated that the defendant had told her that he liked Aldrich, whom he described as a "nice," "old lady," that the patient was "crazy" and that he is "not going to hit people like that." Instead, the defendant stated that he walked down the hallway and heard laughter from Latronica, with whom he was upset. The defendant was angry that the treatment specialists were not doing their jobs, and walked to the break room. The evidence showed that the defendant walked approximately eighty-two feet to the break room to confront the treatment specialists when Aldrich and the patient who woke the defendant were only approximately thirty feet away. This evidence supports the trial court's finding that "the defendant consciously made a decision to confront the individuals he felt were actually to blame for the commotion . . . ."

After the incident, the defendant followed Mack into the conference room, which was the "logical thing to do," spoke to Mack in a concise logical manner, and stated that he did not intend to hurt anyone. Lewis testified, and the trial court agreed, that this statement showed awareness of conduct and intent. Lewis stated: "[S]omeone who is in a dissociative state or doesn't know what they're doing, it would be unusual to talk about their level of intent. And . . . he's calm. . . . [I]t's significant because there have been other times

when he's tearing things off the walls and yelling at people. This was not like that. . . . His account—he describes being angry at people, walking down, cursing them out, pushing a cart, leaving, telling someone I have to get off this unit, I didn't intend to hurt anyone. That's pretty clear thinking." Lewis further testified that in the defendant's own version of the events, he pushed a cart in a "well thought out" manner out of frustration, not impulsivity.

Meisler concluded that the defendant showed some conscious awareness of events at the time given that he engaged those in the break room because he was upset that they were not helping Aldrich. Additionally, Meisler testified that the defendant had a reason and intent to go to the break room and to confront the treatment specialists, and chose to leave the break room after flinging the cart. Thus, notwithstanding his significant psychiatric and behavioral issues, there was sufficient evidence for the trial court to conclude that the defendant possessed the mental capacity to control his conduct and understand and to appreciate the risk resulting from his actions.

Although the defendant argues that he was not aware of White's preexisting condition and thus could not be aware of the risk of serious injury to her, he conceded at oral argument before this court that his awareness of her condition is not necessary for a finding of recklessness. The issue before us, however, is not whether the defendant was aware of White's preexisting condition, but whether the defendant should have recognized that flinging the large metal cart in a small room with others in close proximity could cause serious injury. We, therefore, conclude that the evidence was sufficient to support the defendant's conviction of assault in the second degree.

II

The defendant finally claims that there was insufficient evidence to sustain his conviction of four counts of reckless endangerment in the second degree. Again, the defendant's arguments rest on his claim that he was not aware of the likelihood of injury. The defendant argues (1) that the court erred by relying on its analysis of recklessness in regard to the assault charge when the conduct underlying the reckless endangerment counts differed and (2) that risk of injury to the treatment specialists was speculative. We disagree.

Section 53a-64 (a) provides that "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a risk of physical injury to another person." Here, testimony indicated that the defendant grabbed and threw two duffel bags that were unzipped and contained personal items such as a wallet, keys, a cup, a lunchbox, a notebook, and clothes. In the small break room, there was

a shelf containing boxes and other items in close proximity to the tables around which the treatment specialists were standing. Fuqua testified that the defendant threw the bags toward the right rear corner near where the shelves were located. There was thus sufficient evidence for the trial court to find beyond a reasonable doubt that the treatment specialists were at risk of physical injury from the bags, their contents, or items knocked off the shelf, as the defendant threw the bags in a small room full of people and furniture.

As there was sufficient evidence to find that the defendant was capable of understanding and appreciating the risk of his actions, as previously discussed, there is sufficient evidence in the record to sustain the court's finding that the defendant had the mental capacity to comprehend and to be aware of the risks associated with throwing the duffel bags.[5] We therefore conclude that there was sufficient evidence of the defendant's mental state to convict him of four counts of reckless endangerment in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At the time of the incident, the defendant was confined to Whiting, having been found not guilty by reason of mental disease or defect on charges relating to an assault on a correctional officer. Although the defense expert, Andrew Meisler, a clinical and forensic psychologist, and the state's expert, Catherine Lewis, a professor of psychiatry, disagreed in some respects, they both documented the defendant's cognitive and mental health problems, history of childhood abuse, impulsivity, and low functioning.

[2] The defendant also claims that the trial court erred in relying on Catherine Lewis' testimony in regard to the defendant's diminished capacity defense, as he argues that she did not offer an opinion on whether he was acting recklessly and that her testimony was limited to her opinions on his mental disease or defect defense. We reject this argument. As Lewis provided testimony as to the defendant's mental state, this testimony is relevant as to whether the defendant had the capacity to engage in reckless conduct. We note that Lewis was not permitted to testify as to the ultimate question.

[3] Evidence shows, and the trial court found, that White had suffered a previous injury to her cervical spine, but that the injury was to a different area of her spine and had been stabilized prior to the present incident.

[4] At oral argument before this court, defense counsel stated that the defendant does not argue that his conduct was not the cause of White's injury but claims that there was insufficient evidence of the requisite mental state of being aware of the risk of injury to her as it was her reaction to being hit by the cart, and not the cart itself, that injured her.

[5] Even if, as the defendant argued, he had no knowledge of the contents of the duffel bags, or that they were unzipped, his lack of knowledge is not relevant to a lack of awareness of a risk or conscious disregard of a substantial risk that the bags or their contents could injure someone.